IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02677-CMA-MEH

LARRY C. MILLER

      Plaintiff,

v.

CAPTAIN KASTELIC,
DANIEL REIMER, and
LT. RIDGWELL,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants Kastelic and Ridgwell's Motion for Summary Judgment

[filed November 22, 2013; docket #140].   The motion has been referred to this Court for

recommendation.   (Docket #141.)   The motion is fully briefed, and the Court finds that oral

argument will not assist in the adjudication of the motion.   Based upon the record herein and for the

reasons that follow, the Court RECOMMENDS that Defendants' motion be **GRANTED**.[1]

_____

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file
any written objections in order to obtain reconsideration by the District Judge to whom this case is
assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings
or recommendations to which the objections are being made.  The District Court need not consider
frivolous, conclusive or general objections.  A party's failure to file such written objections to
proposed findings and recommendations contained in this report may bar the party from a de novo
determination by the District Judge of the proposed findings and recommendations. *United States
v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file
written objections to the proposed findings and recommendations within fourteen (14) days after
being served with a copy may bar the aggrieved party from appealing the factual findings of the
Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140,
155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

# BACKGROUND

## I.    Findings of Fact

The Court finds the following facts, some of which are stipulated by the parties and the remainder viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1.      Plaintiff is a convicted sex offender. (Docket #1 at 6, ¶ Nature of the Case.)[2]

2.      Plaintiff arrived at Crowley County Correctional Facility ("CCCF") on July 16, 2012. (*Id.*)

3.      Upon arrival at CCCF, a small group of inmates approached Plaintiff and demanded Plaintiff show "his papers" to prove that he was a sex offender. (*Id.*) Plaintiff refused, but admitted to being a convicted sex offender. (*Id.*)

4.      The group of inmates demanded "rent" from Plaintiff. (*Id.*) Plaintiff refused to pay the inmates any money. (*Id.*)

5.      Plaintiff feared the inmates would continue to threaten him and potentially assault him. (*Id.*) Because of this fear, Plaintiff spoke to the prison chaplain, Corrections Officer Dietrich, and Shift Commander Kastelic about the threats and requested a change of unit. (*Id.*)

6.      Defendant Kastelic responded, "There are no protective units at this facility and if you refuse your (assigned) room, I will put you in segregation." (*Id.* at 14, ¶ Cause of Harm.) Plaintiff chose not to go to segregation, because he perceived the move as punishment. (*Id.*)

7.      Plaintiff's cell was a standard, temporary placement and was not a "special threat group"

---

[2] In the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56.  *See Adams v. Dyer,* 223 F. App'x 757, 764 (10th Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)).

unit. (Docket #140-2, ¶ 10.)

8.    Plaintiff's cell mate was Defendant Daniel Reimer. (Docket #1 at Page 6, ¶ Nature of the Case.)

9.    Plaintiff states that he also told Commander Kastelic that "he was in danger by being placed in the cell they had placed him in as Inmate Reimer was a 211 member and he [Plaintiff] had a sexually based offense." (Docket #165, ¶ 5.)

10.   Reimer did not have a violent history. (Docket #140-3, ¶ 7.)

11.   Plaintiff and Reimer got into an altercation in Plaintiff's unit. (*Id*.) Plaintiff sustained injuries to his face, eyes, and back. (*Id*.; docket #169.)

12.   Only five hours had passed between Plaintiff's arrival at CCCF and the altercation. (Docket #1 at Page 20, ¶ Administrative Relief.)

13.   Plaintiff was charged with and convicted of a violation of the Code of Penal Discipline ("COPD") for fighting and possession of a contraband weapon. (Docket #140-2, ¶ 5.) Plaintiff had a "lock in a sock" in his cell. (*Id*. at ¶ 6.)

14.   Plaintiff alleges he was not allowed to plead self-defense in his COPD hearing. (Docket #1 at Page 18, ¶ Claim 11.) However, Defendants claim the Plaintiff was allowed to plead self-defense. (Docket # 140-2, ¶ 6.)

15.   Plaintiff's conviction was overturned on appeal. (*Id*. at ¶ 7.)

## II.    Procedural History

Plaintiff initially brought twelve claims against seven defendants. Claims 8, 9, and 10 were dismissed without prejudice. (Docket #17.)  Defendants Warden Miller, Corrections Corporation of America, and Tom Clements were dismissed due to the dismissal of Claims 8, 9, and 10. (*Id*.)

Plaintiff independently dismissed Defendant Investigator Brownstein; therefore, Claim 12 is moot. (Docket #51.)  The remaining claims 1-6 are brought against Defendant Reimer, claim 7 is brought against Defendant Kastelic, and claim 11 is against Defendant Lieutenant Ridgwell. Defendants Kastelic and Ridgwell filed the present Motion for Summary Judgment on claims 7 and 11.

Based on the facts set forth above, Plaintiff brings claim 7 for failure to protect and claim 11 for a due process violation.  Specifically, Plaintiff alleges that Kastelic failed to protect Plaintiff after he expressed a concern for his safety and explained the conflict with Reimer. For claim 11, Plaintiff alleges that Ridgwell deprived him of his constitutional right to due process by not allowing Plaintiff to assert self-defense at Plaintiff's COPD hearing. Plaintiff requests compensatory and punitive damages as relief against the individual Defendants jointly and severally.  (Docket #1.)

Defendants responded to the Complaint by filing Answers denying all claims made by Plaintiff in his Complaint and alleging, *inter alia*, that the Plaintiff fails to state any claims upon which relief can be granted.  Following the discovery period, Kastelic and Ridgwell filed the present motion arguing that there "is no genuine issue of material fact." (Docket #140.)  Defendants contend the Plaintiff's primary allegation is that, as a sex offender, he was targeted by inmates, including Reimer, and that he warned corrections staff that he had been threatened numerous times. Specifically, against Kastelic, Plaintiff alleges that upon being informed of issues with Reimer, Kastelic failed to keep Plaintiff safe from the altercation with Reimer.  Moreover, Plaintiff alleges that Ridgwell violated his constitutional rights by rejecting Plaintiff's claim of self defense and by finding Plaintiff guilty of the COPD violation.

The Defendants argue that the Plaintiff must prove both an objective and subjective standard to succeed on the failure to protect claim.  That is, Plaintiff must prove that Kastelic knew or should

have known that Plaintiff's complaints of harassment caused an excessive risk of harm.  Kastelic argues that (1) the record does not support Plaintiff's allegations; (2) it is common for prisoners not to get along, and if Plaintiff truly believed he was in imminent danger, he should have chosen to move to segregation; and (3) the fact that an incident occurred does not establish reckless disregard. In addition, Ridgwell argues that his rejection of self-defense was a reasonable interpretation of the facts surrounding the altercation and, therefore, he did not violate Plaintiff's constitutional right to due process.

Plaintiff responds that Defendants are misrepresenting the truth, and the facts presented by the Defendants are misleading. Specifically, Plaintiff rebuts specific factual allegations made by Defendants; however, he does not cite to the record or provide evidence for his rebuttals.  Plaintiff asserts that he has provided enough evidence in the record to support a failure-to-protect claim as laid out in *Farmer v. Brennan*, 511 U.S. 825 (1994).  He further contends that the record sufficiently supports his claim by demonstrating that Plaintiff: (1) provided notice to Kastelic; (2) was susceptible to violent attacks due to the nature of his offense; and (3) was receiving threats consistently throughout the day.  Moreover, Plaintiff asserts that Ridgwell denied Plaintiff his due process rights by not allowing Plaintiff the opportunity to plead self defense by (1) not gathering evidence and (2) not allowing Plaintiff to testify.

Defendants reply stating that Plaintiff did not comply with Judge Arguello's practice standards by failing to provide factual allegations supported by specific references to material in the summary judgment records and by failing to present any additional material facts that are disputed and create a genuine issue of material fact.  The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

### I.      Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  However, the non-moving party has the burden of showing that there are issues of material fact to be determined.  *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002).  These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere

pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.    Treatment of a Pro Se Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

With these legal precepts in mind, the Court will begin its analysis by determining whether Plaintiff has raised a genuine issue of material fact sufficient to allow his claim 7 for failure to

protect against Kastelic to proceed to trial, then address Plaintiff's claim 11 for a due process violation against Ridgwell in the same manner.

## I.      Failure to Protect Claim

For his claim 7, Plaintiff asserts that Kastelic was deliberately indifferent to his safety when he did not transfer Plaintiff to a different cell knowing that Plaintiff had received threats from other inmates because of his classification as a sex offender.  Defendants counter that Plaintiff has not provided any evidence that raises a genuine issue of material fact about whether Plaintiff suffered conditions posing a substantial risk of serious harm and whether Kastelic was deliberately indifferent to Plaintiff's safety.

### A.     Deliberate Indifference to Substantial Risk of Serious Harm

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and . . . tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993); *see also Estelle,* 429 U.S. at 105.

"To establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must

show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)). Plaintiff must meet both the objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura*, 461 F.3d at 1291).

To meet the subjective component, a plaintiff must demonstrate defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she [or he] consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (unpublished) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

B.    Did Conditions Pose Substantial Risk of Serious Harm?

Plaintiff contends that he was placed in a special threat group pod and, because he was a convicted sex offender, he was placed in a position of substantial risk and serious harm; however, Plaintiff does not provide sufficient evidence to create a genuine issue of material fact. Plaintiff attests that upon arrival on July 16, 2012, he received threats of physical assault from multiple inmates. (Docket #1.) "A prisoner has a right to be reasonably protected from constant threats of violence and sexual assaults from other inmates." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th

9

Cir. 1996) (citation omitted).  After complaining to Kastelic, Plaintiff was not moved out of his cell, and Plaintiff asserts that Kastelic responded, "there are no protective units at this facility and if you refuse your (assigned) room, I will put you in segregation." *Id*.  Whether accurate, the Plaintiff interpreted Kastelic's response as a threat of punishment and chose to remain in his cell. Nevertheless, due to Plaintiff's complaints, Corrections Officer Dietrich checked on Plaintiff's cell throughout the day.

Under these circumstances, Plaintiff fails to demonstrate on supported facts that he was incarcerated under conditions posing a substantial risk of serious harm.  The mere fear of physical assaults by inmates who may discover that Plaintiff was charged with a sex offense is insufficient to constitute a substantial risk of serious harm under the Eighth Amendment. *See Riddle*, 83 F.3d at 1205.  Plaintiff does not provide any evidence raising an inference that his cell posed any more of a risk than any other cell.  In fact, Plaintiff had been in the cell only one day, the cell was not a STG pod, Plaintiff was given the option to move to segregation, he was informed that any moves to a different cell or the Chaplain's unit would take a few days, and a corrections officer checked on him periodically throughout the day.

Plaintiff's proffered evidence fails to raise a genuine issue of material fact even considering the facts most favorable to him.  The Plaintiff's affidavit recounts the incident, asserts that Reimer was a known member of the gang known as the "211's," and describes the conversation Plaintiff had with Kastelic about his fears.  However, Plaintiff fails to allege that Kastelic knew Reimer was a known member of the gang; in fact, Corrections Officer Dietrich, who was on duty in the unit at the time of the altercation, attests that he had no knowledge that Reimer had any violent history prior to the altercation.  (Docket # 140-3 at ¶ 7.)  Finally, Plaintiff neither alleges nor offers any evidence

that other sex offenders suffered threats or physical assaults by Reimer.

Plaintiff does not provide sufficient evidence to demonstrate any genuine issue as to a known substantial risk of harm that was sufficiently serious.  Plaintiff merely provides self-serving testimony of his perception of the conditions and offers no direct or circumstantial evidence of the environment.  Accordingly, the Plaintiff fails to meet the objective component of his Eighth Amendment claim for failure to protect.

      C.     <u>Was Defendant Kastelic Deliberately Indifferent?</u>

Even if Plaintiff could meet the objective component, the Court finds he fails to demonstrate a genuine issue of material facts as to the subjective component.  "Deliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia,* 327 F.3d at 1175.  A plaintiff "must do more than establish that [the defendant] should have known of the risk of harm." *Id.*  He "[m]ust present evidence supporting an inference that [the defendant] actually knew about a substantial risk of serious harm to his safety."  *Id.*  "Deliberate indifference requires that the defendant's conduct is in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow or that the conduct disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights."  *Id.* at 1175-76 (internal quotations omitted).

Here, the Plaintiff has failed to establish genuine issues as to whether he was placed in a position that posed a substantial risk of serious harm; thus, even if true that Kastelic knew about Plaintiff's concerns about his cell mate, Kastelic cannot be said to have "disregard[ed] a known or obvious risk that is very likely to result" in threats to or physical assault upon the Plaintiff. "Without evidence of actual knowledge and the availability of reasonable responses, a prisoner's specific

vulnerabilities, whether related to physique . . . or other characteristics, will not alone form the basis for a cognizable Eighth Amendment Claim." *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008). The undisputed facts suggest that Plaintiff was a known convicted sex offender, that he requested a cell change, that he was given the option to move to segregation until a more permanent change could be made, and that no more than five hours had passed since the time of his arrival. Moreover, there is no allegation nor evidence that Kastelic himself knew whether Reimer had any history of violence. Based on these facts, there is no genuine issue of material fact as to whether Kastelic was deliberately indifferent to a known risk of harm. The mere fact that an altercation took place does not show that Kastelic had subjective knowledge of the potential for harm.

The Court concludes that Plaintiff has failed to demonstrate issues of material fact as to whether Kastelic violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Consequently, this Court recommends that the District Court grant Defendants' motion for summary judgment on claim 7 against Defendant Kastelic.

## II.     Due Process Violations

### A.     Failure to Allow Self-Defense

For his claim 11, Plaintiff asserts that Defendant Ridgwell violated his constitutional right to due process by not allowing Plaintiff to plead self-defense at his COPD hearing. Defendants counter that Ridgwell allowed Plaintiff to assert self-defense, and Ridgwell rejected the claim based on facts presented at the hearing.

In Warden Michael Miller's Declaration, (docket #140-2), the Warden states that Plaintiff had the opportunity to plead self-defense, and Defendant Ridgwell declined to accept the self-defense plea because of the "lock in a sock" found in Plaintiff's cell. The Warden overturned the

conviction because he believed the Plaintiff was likely victim to a "shakedown" and, therefore, it was reasonable for the Plaintiff to have a "lock in a sock" in his cell to defend himself. Because the Warden overturned the very conviction that Plaintiff claims violated his due process rights, the claim is moot. "Any alleged violations of due process in applicant's first disciplinary hearing, however, were mooted by his successful appeal and rehearing." *Saleh v. Davis*, 2011 WL 334321 (D. Colo 2011) (quoting *Brown, Wyo. Dept. Of Corrs. State Penitentiary Warden*, 234 F. App'x 874, 878, n. 1 (10th Cir. 2007)).

   B.   Deprivation of Liberty Interest

   Plaintiff also argues that the conviction by Defendant Ridgwell deprived Plaintiff of a liberty interest by sentencing him to 45 days in punitive segregation. The Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists.

   Defendants contend that Plaintiff has raised no genuine issues of material fact with respect to his only remaining claim, confinement to disciplinary segregation without due process. This claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v.*

13

*McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received 30 days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Id*. at 483-84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487.  Thus, the first question to answer is whether the inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment.

In this case, to prove that he suffered a due process violation, the Plaintiff must demonstrate that the sanctioned restraint – here, 45 days in punitive segregation – imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life.  For purposes of this

motion, however, the Plaintiff need only establish a genuine issue as to any material fact whether he suffered the "hardship" defined in *Sandin* and, thus, whether he gained a right to due process protections during his disciplinary hearing.

        1.      What Constitutes a "Hardship"?

Following *Sandin*, the Tenth Circuit held that, at the summary judgment stage, a district court must carefully examine the conditions (degree) of the prisoner's confinement in punitive segregation (*i.e.*, whether such conditions mirror those in administrative segregation and protective custody) and must determine whether the duration of confinement is itself atypical and significant. *See Gaines v. Stenseng, et al.*, 292 F.3d 1222, 1226 (10th Cir. 2002).

A "significant and atypical hardship" sufficient to create a liberty interest appears to this Court to be one that is of substantial degree and duration. For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate indefinitely in a super-max prison where almost all human contact was prohibited and which made the inmate ineligible for parole. *Wilkinson*, 545 U.S. at 224. Moreover, the Tenth Circuit found that an inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours each week and denied access to any outdoor recreation arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

With these legal principles in mind, the Court will analyze whether Plaintiff has demonstrated a genuine issue of material fact as to whether his punishment was of sufficient duration and degree to create a liberty interest pursuant to *Sandin* and its progeny.

2.      Duration and Degree

Plaintiff has not argued that he suffered an atypical or significant hardship.  However, Plaintiff's period in segregation was an appropriate disciplinary decision for the contraband weapon found in Plaintiff's cell.  Plaintiff received 45 days in punitive segregation due to his conviction for possessing a contraband weapon in his cell and for fighting.  If Plaintiff were to serve these sanctions consecutively, Plaintiff could have served up to 50 days in punitive segregation according to the Code of Penal Discipline (COPD).[3]  The COPD notes that sanctions should be served "concurrently for cumulative offenses arising out of the same act and/or incident."  But, the Plaintiff neither alleges nor provides evidence that the Hearing Board determined the two convictions were the same act or incident.  Additionally, Plaintiff does not provide any evidence as to whether the conditions in punitive segregation create a "significant and atypical hardship."  Plaintiff notes that as an inmate with mental illness, punitive segregation is particularly difficult; however, he does not address how the conditions in punitive segregation are any different than those in the general population.

Plaintiff's sanctions were reasonable considering the convictions he received. The 45 days he spent in punitive segregation were for a reasonable length of time for both violations, and there is nothing demonstrating the conditions in punitive segregation were unreasonably different than those in the general population.  Thus, even drawing all inferences in the light most favorable to

_____

[3]30 maximum days in punitive segregation, Possession of Dangerous Contraband, a Class I Rule 12 violation, 4-4255 COPD, 150-01 Department of Corrections, Colorado Administrative Regulations. 20 maximum days in punitive segregation, Fighting, a Class II Rule 12 violation, 4-4255 COPD, 150-01 Department of Corrections, Colorado Administrative Regulations. However, the sanctions should be imposed concurrently for cumulative offenses arising out of the same act and/or incident. Formal Disposition (p)(10).

16

him, this Court finds that Plaintiff fails to demonstrate any genuine issue of material fact concerning whether Ridgwell deprived him of a liberty interest.

The Court concludes that Plaintiff has failed to demonstrate issues of material fact as to whether Ridgwell violated Plaintiff's Fourteenth Amendment right to due process. Consequently, this Court recommends that the District Court grant Defendants' motion for summary judgment on claim 11 against Defendant Ridgwell.

## CONCLUSION

In sum, the Court finds that there are no genuine issues of material fact as to whether Defendant Kastelic failed to protect Plaintiff in violation of the Eighth Amendment. Further, the conviction which Plaintiff claims violated his constitutional right to due process was overturned, and Plaintiff has failed to demonstrate any genuine issue of material fact as to whether Defendant Ridgwell deprived him of a liberty interest in violation of the Due Process clause.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Defendants Kastelic and Ridgwell's Motion for Summary Judgment [filed November 22, 2013; docket #140] be **GRANTED**.

Entered and dated at Denver, Colorado, this 3rd day of April, 2014.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge

17